UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JANE DOE,** ) | |
| Plaintiff, ) | |
| v. ) | |
| **CODY MCCANN,** ) | |
| **COLLEGE OF** ) | |
| **OUR LADY OF THE ELMS,** ) | |
| **TERESA WINTERS,** ) | |
| **ANDREW COSTON,** ) | C.A. 3:24-cv-30128 |
| **and PABLO MADERA,** ) | |
| Defendants ) | |
| ) | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**Parties**

1. Plaintiff Jane Doe is an individual who resides in Lancaster, Lancaster County, Pennsylvania and is a freshman student at College of Our Lady of the Elms in Chicopee, Hampden County, Massachusetts.

2. Defendant Cody McCann is an individual who resides in Springfield, Hampden County, Massachusetts and was at all times relevant a freshman student at College of Our Lady of the Elms in Chicopee, Hampden County, Massachusetts.

3. Defendant College of Our Lady of the Elms is a private secondary education institution located in Chicopee, Massachusetts.

4. Defendant Teresa Winters is an individual who upon information and belief resides in South Hadley, Massachusetts, and who at all times relevant was

and is employed at College of Our Lady of the Elms and acts as their Title IX Deputy.

5. Defendant Andrew Coston is an individual who upon information and belief resides in Chicopee, Massachusetts and at all times relevant was and is employed by at College of Our Lady of the Elms and acts as their Vice President.

6. Defendant Pablo Madera is an individual who upon information and belief resides in Chicopee, Massachusetts and at all times relevant was employed by at College of Our Lady of the Elms and acts as the Director of Public Safety.

**Jurisdiction, Venue and Standing**

7. Plaintiff brings this action under Title IX for sex discrimination and harassment, along with ancillary state claims, giving this Court federal question jurisdiction under 28 U.S.C. § 1331.

8. Defendant Our Lady of the Elms (hereinafter "Elms") is a private educational institution that receives federal financial assistance[1], thus subjecting it to a private right of action for claims under Title IX.

9. Venue is proper under 28 U.S.C. § 1391, in that all of the defendants reside in Western Massachusetts, and the substantial part of the events or

---

[1] The most recent 990 form publicly available on the IRS website lists Elms as having received $5,204,824 in government grants in the year 2021 alone. See: https://apps.irs.gov/pub/epostcard/cor/042225850_202206_990_2023060921420306.pdf

omissions giving rise to the Plaintiff's claim occurred in Hampden County, Massachusetts.

10. Further, diversity of citizenship between the parties exists, giving this Court jurisdiction under 28 U.S.C. § 1332.

**Factual Allegations**

11. Plaintiff lived in the Rose William building, on an all-girls floor. The Rose William Building was a co-ed dorm at the Elms property.

12. Plaintiff moved into her dorm at the Rose William building in the fall of 2023.

13. The Rose William building was owned and controlled by defendant Elms and was used to house students who were enrolled at Elms College.

14. Defendant McCann would consistently spend time with the women on the third floor, which was an all-female living area.

15. On or about September 25, 2023, Defendant Cody McCann asked Plaintiff if he could come over to Plaintiff's dorm room to watch a movie, claiming that his roommate was occupying his room.

16. At this point, Defendant McCann had been pursuing Plaintiff for about a week and half.

17. When he went to Plaintiff's dorm the evening of September 25, 2023, Defendant McCann began to engage in otherwise harmless flirting with the Plaintiff.

18. Then, Defendant McCann attempted to kiss Plaintiff Doe, an advance she rebuffed.

19. Defendant McCann began manipulating Plaintiff, asking her to "trust him" and assuring Plaintiff that he had no bad intentions, all in an effort to guilt Plaintiff and lower her guard.

20. Defendant McCann and Plaintiff moved to Plaintiff's bed to watch a movie.

21. Defendant McCann again started to kiss Plaintiff's neck, making her feel uncomfortable.

22. Plaintiff clearly and specifically told Defendant McCann to stop.

23. Defendant McCann then placed himself on top of Plaintiff Doe, aggressively kissing her neck despite her protests.

24. Defendant McCann then placed his body on top of Plaintiff, preventing her from pushing him off.

25. Plaintiff then heard Defendant McCann pull his pants down and began to panic, telling him to stop.

26. Plaintiff Doe is a previous victim of sexual assault.

27. Defendant McCann's forcing himself on top of Plaintiff and pulling his pants down triggered Plaintiff's previous trauma and caused her to "freeze".

28. McCann began to rub his penis against Plaintiff's vagina.

29. Defendant McCann stated, "if I don't do it for myself, do it for me".

30. Plaintiff began to cry.

31. Plaintiff Doe repeatedly and continually told Defendant McCann "no".

32. McCann finally got off of Plaintiff, put his hands on her vagina, and told her she was "oh you feel so wet".

33. Plaintiff Doe then told Defendant McCann she wanted to go to sleep, and both Plaintiff and Defendant McCann fell asleep.

34. Later in time, at a floor meeting for the women in her dorm, another female student confided in Plaintiff that Defendant McCann had sexually assaulted a different female, making Plaintiff McCann's second victim.

35. Plaintiff also notified Defendant Elms and went through the Title IX process.

36. Defendant McCann was not punished for his conduct, and instead was simply told not to venture into the female floors of his dorm.

37. Plaintiff later became aware that Defendant McCann had sexually assaulted yet another victim.

38. Plaintiff assisted the third victim in obtaining a restraining order against Defendant McCann, and both Plaintiff and the third victim pursued criminal charges against McCann.

39. Later, on its Instagram page, Defendant Elms posted a picture of Defendant McCann (at this time having had three separate Title IX complaints lodged against him) with his arm around a female Elms college student and wishing their students a Happy New Year.

40. Eventually, after three sexual assaults by McCann, Defendant Elms notified McCann that he was unable to enroll in further classes at the College.

**November 2024 Conduct by Elms**

41. In November of 2024, Elm's Sociology Professor, Kathleen Angco-Vieweg, held a class wherein the Plaintiff's allegations against the School and McCann were discussed.

42. At the start of the class, Angco-Vieweg passed out copies of Plaintiff's initial Complaint against Elms and McCann.

43. Angco-Vieweg then asked students to raise their hands if they knew the identity of the plaintiff(s) who had filed claims against the school.

44. A few students raised their hands.

45. To date, the identities of the two women who filed lawsuits against Elms regarding these claims has not been made public.

46. The class then included a breakout session, where the class was broken up into groups, and the groups were ordered to read copies of the Complaint and discuss whether they believed the Plaintiff's version of the events – whether they thought the Plaintiff's story was "credible".

47. This activity put the Plaintiff's identity at risk, and has otherwise led to a culture wherein Plaintiff is in fear of retaliation by staff and other students, as her allegations are being subjected to public scrutiny by members of Elms Staff.

48. Plaintiff does, in fact, fear retaliation from students and staff.

49. Upon information and belief, Angco-Vieweg's actions were based upon statement made by the Elms President, Harry Dumay, to Elms faculty,

telling them to support their fellow faculty members after the Plaintiff filed a lawsuit.

## COUNT I
### (20 U.S.C. § 1681 Title IX Violation – As to Elms, Winters, Coston and Madera)

50. Plaintiff repeats and re-alleges paragraphs 1-40 of this Complaint

51. Title IX prohibits educational institutions who receive federal funds from excluding individuals from participating in, denying the benefits of, or subjecting to discrimination any educational program or activity.

52. Plaintiff, after having been sexually assaulted by Defendant McCann, lost motivation to study, missed classes and otherwise saw a decline in her academic performance.

53. Plaintiff, after having been sexually assaulted by Defendant McCann, was prevented from freely accessing the facilities at her college, including the library, dining facilities and classrooms, or was otherwise forced to use these facilities in fear of Defendant McCann's being present.

54. Plaintiff was now the second female student that Defendants Elms, Winters, Coston and Madera knew that Defendant McCann had sexually assaulted.

55. By failing to prevent or punish Defendant McCann's sexual assault, Defendants created a culture where female students could not access Elm's benefits, services, programs and other activities at the same level as male students.

56. Therefore, the aforementioned Defendants denied female students the same benefits that male students were given, in that those female students, such Plaintiff, were unable to safely use Elms' facilities without fear of sexual assault.

57. Elms, Winters, Coston and Madera had authority to address the discrimination and sexual assault occurring at Elms College.

58. Elms, Winters, Coston and Madera acted with deliberate indifference towards the discrimination and sexual assault by allowing McCann to continue to roam the female dorms, or by otherwise taking no meaningful steps to prevent him from sexually assaulting others, including Plaintiff.

59. In addition, Elms, Winters, Coston and Madera failed to provide any meaningful security or protection surrounding McCann's restrictions.

60. These actions and lack of actions toward Defendant McCann's sexual assault were so severe, pervasive and objectively offensive that they deprived Plaintiff of access to the opportunities or benefits provided by the school.

61. These actions and lack of actions toward Defendant McCann's sexual assault were clearly unreasonable in light of the known circumstances.

62. Plaintiff suffered severe emotional and physical damage, especially in light of her having been previously sexually assaulted.

63. Elms' actions, by its faculty (Angco-Vieweg), in publicly scrutinizing Plaintiff's Title IX claims in front of an entire class, identifying individuals who would be able to share the names of the Plaintiff to other students, and

otherwise discussing whether Plaintiff's allegations were "credible" created a culture where female students, like Plaintiff, would be afraid to come forward with allegations of sexual assault, and otherwise prevent female students, including Plaintiff, from access to Elm's benefits, services, programs and other activities at the same level as male students.

## COUNT II
### (Negligence – As to Elms, Winters, Coston and Madera)

64. Plaintiff repeats and re-alleges paragraphs 1-53 of this Complaint.
65. Defendants at all times relevant, owed their students a duty of reasonable care in the manner in which they operated the school, including with respect to dorm room discipline and safety.
66. Defendants breached their duty to Plaintiff when, after becoming aware of the dangers posed by Defendant McCann, including his repeated sexual assaults, they failed to take any reasonable steps to prevent him from sexually assaulting others, or otherwise warning students to prevent this from happening to them.
67. As a direct and proximate cause of Defendants' negligence, Plaintiff unsuspectingly allowed Defendant McCann into her dorm room where she was sexually assaulted.
68. Plaintiff suffered significant physical and emotional damages as a result of Defendants' breach.

## COUNT IV

**(Intentional Infliction of Emotional Distress – As to McCann)**

69. Plaintiff repeats and re-alleges paragraphs 1-58 of this Complaint

70. Defendant McCann, when he repeatedly sexually assaulted Plaintiff after she told him she did not want to engage in sexual conduct, knew or should have known that his conduct would cause Plaintiff emotional distress.

71. Defendant McCann, in rubbing his genitals on Plaintiff, positioning Plaintiff so that she could not move, and by rubbing her vagina after assaulting her, was engaging in extreme and outrageous conduct.

72. Plaintiff, as a result of Defendant McCann's aforementioned conduct, suffered severe and prolonged humiliation and emotional distress.

## COUNT V
**(Assault and Battery – As to McCann)**

73. Plaintiff repeats and re-alleges paragraphs 1-62 of this Complaint.

74. Defendant McCann's actions demonstrated an intent to cause a harmful or offensive contact with Plaintiff, in that she told McCann that she did not wish to engage in sexual activity, but he forced himself on her regardless.

75. Defendant McCann, in refusing to abide by Plaintiff's boundaries and instead forcibly assaulting her, did in fact make contact with the Plaintiff, as evidenced by his rubbing his genitals on her vagina and then touching her vagina after she told him no.

WHEREFORE, plaintiff requests this Honorable Court enter judgment against the defendants jointly and severally on all counts of this complaint and:

      a) Award compensatory damages;

      b) Award punitive damages;

      c) Award interest and costs of this action to plaintiff;

      d) Award attorney fees to plaintiff; and

      e) Award such other relief which this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully submitted,

Plaintiff, by her attorneys:

| /s/ Michelle S. Cruz | /s/ Ryan P. McLane |
|---|---|
| Michelle S. Cruz, Esq. | Ryan P. McLane, Esq. |
| Law Offices of Michelle S. Cruz | McLane & McLane, LLC |
| 1380 Main Street, Suite 403 | 269 South Westfield |
| Springfield, MA 01103 | Feeding Hills, MA 01030 |
| (413) 592-9400 | (413) 789-7771 |
| Cruz4law@gmail.com | ryan@mclanelaw.com |
| BBO: 651081 | BBO: 697464 |